STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-03-046
GAB~   ,6 ~  >'

RAYMOND E. CRONKITE,

Plaintiff

v.

ORDER

CITY OF BIDDEFORD, et al.,

Defendants

DONALD L.
LAW LIBRARY

JUL 9 2004

Before this court is Plaintiff, Raymond E. Cronkite's ("Cronkite") Rule 80B appeal.

## FACTS

In October 2001, Defendant, City of Biddeford ("City") established a Land Use Regulation known as the "Institutional Master Plan," which was approved by the Biddeford City Council. The Institutional Zone provides that future construction within said zone must be consistent with a Master Plan and individual site plan review and approval in accordance with Defendant City's Zoning Ordinance.

In March 2003, Intervenor Defendant, the University of New England ("UNE") submitted a five-year Master Plan (the "Plan"). Upon receipt of this Plan, Defendant City's Planning Office provided written input to Intervenor Defendant UNE. In addition, Defendant City's Planning Board ("Planning Board") held a public hearing regarding the Plan. Plaintiff Cronkite, a resident of Hills Beach, submitted written comments, after the hearing, opposing the Plan. Specifically, Plaintiff Cronkite complained about traffic impacts of the Plan.

Despite Plaintiff Cronkite's objections, on May 8, 2003, the Planning Board issued a Notice of Decision approving Intervenor Defendant UNE's Plan. Following this approval, Plaintiff Cronkite, filed a Notice of Appeal with Defendant City's Zoning Board of Appeals (the "ZBA"). Plaintiff Cronkite raised four issues before the ZBA. These issues included: that the Planning Board erred by failing to obtain an independent traffic study, by not taking adequate measures to remedy existing traffic dangers, by approving brick dormitories, and by excluding public participation.

On October 7, 2003, the ZBA issued a written decision affirming the Planning Board's decision. Accordingly, on August 8, 2003, Plaintiff Cronkite appealed the ZBA's decision to the York County Superior Court.

## DISCUSSION

This court, acting in an intermediate appellate capacity, will review the Board's decision "directly for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record." Priestly v. Town of Hermon, 2003 ME 9, ¶ 6, 814 A.2d 995, 997. The Superior Court will affirm the Board's decision unless it is unlawful, arbitrary, capricious, or unreasonable. Senders v. Town of Columbia Falls, 647 A.2d 93, 94 (Me. 1994). The Board's findings will not be disturbed if supported by substantial evidence contained in the record. Palesky v. Town of Topsham, 614 A.2d 1307, 1309 (Me. 1992). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." Id.

In addition, the Law Court has held that interpretation of an ordinance is a question of law that the court reviews de novo. Isis Dev., LLC v. Town of Wells, 2003 ME 149, ¶ 3, 836 A.2d 1285, 1287 (citations omitted). In construing the language of a zoning ordinance, the court takes into consideration "both the objectives sought to be

obtained and the general structure of the ordinance as a whole." Id. (citations and internal quotations omitted).

## A. Which Decision To Review?

To determine which decision to review, the Law Court has said that:

> [i]f the Board of Appeals acted as a tribunal of original jurisdiction, that is, as factfinder and decision maker, we review its decision directly. If, however, the Board acted only in an appellate capacity, we review directly the decision of the Planning Board, or other previous tribunal, not the Board of Appeals.

Yates v. Town of Southwest Harbor, 2001 ME 2, ¶ 10, 763 A.2d 1168, 1171 (citing Stewart v. Town of Sedgwick, 2000 ME 157, ¶ 4, 757 A.2d 773, 775.) To determine the proper role of the ZBA, this court must look to the statute authorizing municipalities to establish Boards of Appeals and to Defendant City's own ordinances. Yates, 2001 ME 2, ¶ 11, 763 A.2d at 1171 (citation omitted).

Title 30-A M.R.S.A. § 2691 establishes hearing procedures to be followed by the ZBA. This statute provides:

> [t]he board [of appeals] may receive any oral or documentary evidence but shall provide as a matter of policy for the exclusion of irrelevant, immaterial or unduly repetitious evidence. Every party has the right to present the party's case or defense by oral or documentary evidence, to submit rebuttal evidence and to conduct any cross-examination that is required for a full and true disclosure of the facts.

30-A M.R.S.A. § 2691(3)(D). This language, the Law Court has found, is characteristic of a fact-finding body and requires a ZBA to conduct hearings *de novo*, unless the municipal ordinance "explicitly directs otherwise." Stewart, 2000 ME 157, ¶ 7, 757 A.2d at 776; Yates, 2001 ME 2, ¶ 11, 763 A.2d at 1171. A municipality, however, may create an appellate role for its ZBA though an ordinance which establishes the appellate function of the ZBA in "explicit terms." Stewart, 2000 ME 157, ¶ 7, 757 A.2d at 776.

3

Therefore, it is necessary for this court to examine Defendant City's ordinance to determine which decision it should review.

Defendant City's ordinance provides that the ZBA has the power to "hear and decide appeals where it is alleged there is a zoning violation or error in any order, requirement, decision, or determination made by the building inspector or planning board in the enforcement of this ordinance." (UNE Ex. 2 at 3.) Here, the ZBA did not take any additional evidence. Accordingly, the ZBA was acting in an appellate role when it reviewed the decision of the Planning Board. Thus, this court should review the decision of the Planning Board.

## B. Did the Planning Board Commit Errors of Law in Approving UNE's Plan?

Plaintiff Cronkite contends that the Planning Board approved Intervenor Defendant UNE's Plan without taking into consideration the adverse affects that the "massive development" would cause on the surrounding residential community.

The Plan is a long-term planning tool designed to meet the needs of Intervenor Defendant UNE balanced against the needs of the surrounding properties. Nothing contained in the Plan, however, provides permission or approval to undertake any construction activity within the Institutional zone. In fact, Defendant City's zoning ordinance specifically provides that it will be necessary for Intervenor Defendant UNE to apply for necessary individual site review approvals, prior to construction, for each project it undertakes. (City of Biddeford Zoning Ordinance Art. V, § 11 C.)

In addition, the sole basis of review of the Planning Board's approval of the Plan is whether the standards contained in section J of the Defendant City's Zoning Ordinance were met. Section J specifically provides:

1. The activities and facilities proposed in the master plan are consistent with the institution's mission statement.

4

2.      The facilities conform to the requirements of the institutional zone and other applicable provisions of the zoning ordinance.

3.      There is a reasonable expectation that individual projects carried out in accordance with the institutional master plan will be able to be designed so that they comply with the site plan review standards of Article XI.

4.      The activities and facilities will be designed in a manner that will not unreasonably increase adverse impacts on adjacent residential neighborhoods or the facilities or services of the City of Biddeford.

5.      The City Council and UNE shall establish a scholarship and community grant program, within the first six months of the acceptance of the University's master plan.

(City of Biddeford Zoning Ordinance Art. V § 10 J.)

In this case, the Planning Board specifically found that the above standards were met. (See May 8, 2003 Planning Board Decision.) The record supports these conclusions of the Planning Board. Plaintiff Cronkite, however, does not argue that the above criteria were not met. Instead, Plaintiff Cronkite contends that the Planning Board failed to adequately consider the traffic impact of Intervenor Defendant UNE's Plan, and argues that the Planning Board should have hired an independent traffic expert to examine the impacts on the Hills Beach area.

The record, however, includes an expert traffic study prepared by Eaton Traffic Engineering, indicating that the traffic impact would not be harmful to the surrounding community. The record also contains evidence that the Department of Transportation concurred with the findings of the expert traffic study. (Planning Board Meeting Minutes of April 23, 2003 at 14-15.) In addition, Plaintiff Cronkite failed to raise his request for an independent traffic study before the Planning Board. See Wells v. Portland Yacht, 2000 ME 20, ¶¶ 5-6, 771 A.2d 371, 373. Consequently, Plaintiff Cronkite

has failed to carry his burden of demonstrating that there is no competent evidence to support the Planning Board's findings.

Moreover, Plaintiff Cronkite's objections to the Plan, specifically his objections regarding traffic and other issues, are not yet ripe for review. Intervenor Defendant UNE has not yet sought a building permit or Planning Board approval for projects continued in the Plan.

### C. Which Zoning Regulations to Apply?

Plaintiff Cronkite also argues that had the Planning Board adhered to the prior zoning regulations of Defendant City, it would have been required to deny Intervenor Defendant UNE's Plan.

This displeasure with the current zoning ordinance is not properly raised on this appeal. The Planning Board properly applied the Institutional Zoning Ordinance in evaluating Intervenor Defendant UNE's Plan, and imposed proper conditions to ensure compliance with these conditions.

WHEREFORE, Plaintiff Cronkite's Rule 80B appeal is Denied.


Dated:      July 6, 2004

PLAINTIFF:
Pro Se
125 Hills Beach Rd
Biddeford Me 04005

G. Arthur Brennan
Justice, Superior Court

DEFENDANT: City of Biddeford
Aaron Burns, Esq.
SMITH ELLIOTT SMITH AND GARMEY
PO Box 1179
Saco Me 04072

INTERVENOR DEFENDANT:   University of New England
Elizabeth Butler, Esq.
PIERCE ATWOOD
One Monument Square
Portland Me 04101-1110

6