2001 ME 9

**Peter FORBES**

v.

**TOWN OF SOUTHWEST HARBOR.**

Supreme Judicial Court of Maine.

Argue Dec. 13, 2000.
Decided Jan. 16, 2001.

William H. Dale, Esq., (orally), Jensen Baird Gardner & Henry, Portland, for plaintiff.

John L. Carver, Esq., (orally), Carver, Kimball & Baiungo, Belfast, for defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Peter Forbes appeals from a judgment entered in Superior Court (Hancock County, *Mead, C.J.*), vacating the decision of the Southwest Harbor Board of Assessment Review, which granted Forbes a 17% tax abatement on property located on Greenings Island in Southwest Harbor. The Town contends the court's judgment should be affirmed for numerous reasons, including: (1) the Board lacked jurisdiction to reconsider the abatement because it failed to reconsider the abatement within 30 days as required by 30–A M.R.S.A. § 2691(3)(F); (2) reconsideration was improper because the stated basis for reconsideration was insufficient to satisfy the requirements of the Town Ordinance; (3) the Board improperly assumed Forbes's burden of proof and substituted its judgment for that of the assessor; (4) the Board improperly considered evidence outside the record; and (5) the Board incorrectly granted Forbes a partial abatement. Forbes argues that the Board's decision to grant the abatement was supported by substantial record evidence. We disagree with the Town's contentions. For the same reasons we stated in *Town of Southwest Harbor v. Harwood*, 2000 ME 213, 763 A.2d 115, another Greenings Island abatement action involving one of the is-

sues encountered in this case, we agree with Forbes and vacate the judgment of the Superior Court.

## I. BACKGROUND

[¶ 2] This appeal arises from the 1997 property tax assessment conducted by the Town of Southwest Harbor of 14 Greenings Island properties, one of which belongs to Peter Forbes. Forbes purchased his 8.72–acre property—which included a three-story, shingle-style cottage [1]—in 1981 for $120,000. The property is located at the northern tip of the island in an area known as Sand Point and is encumbered by several easements, including a conservation easement that places numerous restrictions on the use of the property.

[¶ 3] An assessment of the fair market value of the land on Greenings Island has been difficult because, for many years, ownership of such land has passed down to family members from generation to generation for nominal consideration. Southwest Harbor Assessor Thomas Edwards testified that there had not been a fair market value sale since 1899. Two sales of properties on Greenings Island took place in 1995 and 1996, however, prompting the Town to reassess the Island properties in 1997.[2] As part of this reassessment, Forbes's property was revalued at $932,600 ($698,800 for the land and $233,800 for the building) for the 1997 tax year, about a 49% increase over the prior year.[3] Forbes sought an abatement from the Town and was denied. He appealed the denial to the Board.

[¶ 4] After two hearings, the Board issued a decision on February 9, 1999, affirming the assessment made by the Town. Forbes filed a timely motion to reconsider. On February 10, 1999, the Board voted to reconsider Forbes's appeal but tabled the reconsideration until May 11, 1999. Forbes appealed the Board's initial denial to the Superior Court in order to preserve his right to appeal and to protect his position with respect to the 30–day time limit imposed by 30–A M.R.S.A. § 2691(3)(F).[4]

1. The cottage was built in 1895 and is dubbed the "white elephant" by the Forbes family. Before he bought it, Forbes testified that the property had been on the market for over three years. One abutting neighbor was given an option to buy the property but declined to exercise the option. This neighbor and the other prospective buyers viewed the cottage as a "white elephant." Consequently, Forbes argued that the cottage, rather than enhancing the value of the property, was a "sale-killer." Over the course of several tax appeals, the town agreed to reassess the house from $300,000 in 1996 to $233,800. Forbes testified that the $233,800 figure "has been used by the town through two subsequent tax assessors."

2. In June 1995, Peter Harwood bought a 19.3–acre parcel for $520,000. The assessed value of the property was $400,200. This property abuts a 9.78–acre parcel Harwood bought in April 1981. Harwood also appealed to the Board and received an abatement, which—like Forbes's case—was then vacated by the Superior Court. *See Town of Southwest Harbor v. Harwood*, 2000 ME 213, ¶ 2, 763 A.2d 115. Harwood appealed, we vacated the court's judgment, and upheld the decision of the Board. *Id.*

In September 1996, Jarvis Newman purchased two parcels on the island for $730,000, roughly 21% more than the assessed value. For the purposes of determining fair market value, Forbes and the Board have combined Newman's purchase of the two lots as one lump purchase. The Town, however, contends the Newman transaction constitutes two separate sales, including a 5.25–acre lot for $501,000 and a 4.59–acre lot for $229,000. In April 1997, six months after the purchase of the property, the Town assessed Newman's property at $883,200, a 21% increase from the sale price.

3. In 1996, Forbes's property was assessed at $625,300 ($325,000 for the land and $300,000 for the building). To get the 49% figure, therefore, the following mathematical equation was used: $932,600/625,300 = 1.491444068 \longrightarrow 1.49$ (rounded off)$\longrightarrow$49% increase.

4. 30–A M.R.S.A. § 2691(3)(F) provides:

The board may reconsider any decision reached under this section within 30 days of its prior decision. A vote to reconsider and the action taken on that reconsideration must occur and be completed within 30 days of the date of the vote on the

The Superior Court (Hancock County, *Kravchuk, C.J.*) remanded, upon Forbes's motion, the matter back to the Board for reconsideration.

[¶ 5] On reconsideration, the Board vacated its decision and granted Forbes a 17% abatement in a decision dated June 8, 1999. On appeal by the Town, the Superior Court did not reach the arguments put forth by the parties, concluding on the merits that "[t]he Board made an error of law and abused its discretion by creating a new formula for appraisal, unsupported by any evidence in the record." Pursuant to M.R. Civ. P. 59(e), Forbes filed a motion asking the court to alter or amend its prior order. The court denied Forbes motion. This appeal followed.

## II. DISCUSSION

■ [¶ 6] When the Superior Court acts as an intermediate appellate court, we directly review the operative decision of the municipality, which in this case is the Board. *Stewart v. Town of Sedgwick,* 2000 ME 157, ¶ 4, 757 A.2d 773, 775 (citation omitted). We review the Board's decision for an abuse of discretion, error of law, or findings unsupported by substantial evidence in the record. *Wesson v. Bremen,* 667 A.2d 596, 598 (Me.1995) (citations omitted). Substantial evidence exists when a reasonable mind would rely on that evidence as sufficient support for a conclusion; the possibility of drawing two inconsistent conclusions does not render the evidence insubstantial. *Adelman v. Town of Baldwin,* 2000 ME 91, ¶ 12, 750 A.2d 577, 583 (citations omitted). We will not substitute our own judgment for that of the Board. *Id.* To vacate the Board's findings, the Town must demonstrate that no competent evidence supports the Board's conclusions. *Id.*

original decision. The board may conduct additional hearings and receive additional evidence and testimony as provided in this subsection.

A. No Violation of Town Ordinance.

■ [¶ 7] We review the Board's decision to reconsider a case for an abuse of discretion. *See Camps Newfound/Owatonna, Inc. v. Town of Harrison,* 604 A.2d 908, 910 (Me.1992). The Town argues that "the bases for reconsideration contained within Plaintiff's ... request, do not factually justify reconsideration under the provision of Article XI(B)" of the Town's ordinance. Section XI(B) of the Ordinance provides:

B. Reconsideration *should* be for one of the following reasons:

1. The record contains significant factual errors due to fraud or mistake, regarding facts upon which the decision was based; or

2. The Board misinterpreted the Ordinance, followed improper procedures, or acted beyond its jurisdiction.

Southwest Harbor, Me., Code § XI(B) (May 1992) (emphasis added). The Town argues that the two reasons delineated in Section IX(B) form the sole bases for any reconsideration the Board takes. Because neither of the stated reasons was the basis of Forbes's motion to reconsider, the Town contends that the Board's reconsideration of Forbes's case contravenes the ordinance.

[¶ 8] Section XI(B) states that the reconsideration *should* be for one of the delineated reasons. We stated in a recent case that the use of the term "should" is permissive. *See Adelman,* ¶ 23, 750 A.2d at 585. The Town's interpretation, however, requires mandatory language, such as "must" or "shall," neither of which is used in the provision at issue. *See id.* Consequently, the Board is not strictly limited to the reasons stated in Section XI(B) when determining whether to reconsider a case.

30-A M.R.S.A. § 2691(3)(F) (1996).

**B. No Consideration of Extraneous Evidence.**

[¶ 9] Alternatively, the Town argues that the Board's purpose for granting the reconsideration was improper because it was based on "new evidence in the [prior] Harwood [proceeding,] which ... is not part of the record in this case." Forbes contends that the Board's decision to reconsider his case stemmed, not from the Harwood proceeding, but from its realization that the Board's earlier decision was based on the mistaken belief that Forbes's 1996 assessed value was not in evidence, preventing it from making calculations to determine whether there was indeed an overassessment.

[¶ 10] Although the record evidence shows that the Board considered the prior Harwood proceeding as a possible factor for granting the reconsideration, the Board ultimately did not rely on evidence presented in the Harwood case. The Board's final basis for granting Forbes a reconsideration was the realization that it had not adequately sorted through the evidence Forbes presented in the earlier deliberations and that Forbes had, indeed, presented evidence relating to the 1996 assessment figures. The Board's decision to reconsider, therefore, was not improper, and the Board did not abuse its discretion.

**C. 30–Day Time Limit Does Not Apply.**

[¶ 11] The Town argues that, because the Board neither complied with Section XI(A)[5] of the ordinance nor with 30–A M.R.S.A. § 2691(3)(F), it lacked jurisdiction—even with a remand order by the Superior Court—to reconsider the matter. The Town argues, therefore, that the Board's original decision denying the abatement must be reinstated. Forbes concedes that the Board did not comply with the time limit prescribed by the statute and ordinance at issue. Nevertheless, Forbes contends that § 2691(3)(F)[6] was designed to protect taxpayers appealing from adverse Board decisions and that rewarding the Town for the noncompliance of its own Board would lead to illogical and unjust results. Forbes also argues that he had no control over the board members' schedules and should not be penalized by the Board's noncompliance with the statute.

[¶ 12] To understand the purpose of § 2691(3)(F), an examination of the legislative history is helpful. *See* L.D. 1198, Maine Municipal Association Testimony (115th Legis.1991). In support of the amendments proposed by L.D. 1198, Maine Municipal Association Representative Pat Finnigan testified, in pertinent part:

> [Subsections F and G] clarify the time periods for the board to reconsider its actions or for people to appeal decisions of the board to court. Currently the board may <u>reconsider</u> its action with[in] 30 days of making its decision; there is no limit on when the board must reach a decision on its reconsideration. This causes a problem for the appellants if they wish to appeal the board's decision to the Superior Court because they only have 30 days from the time of the original decision to appeal to the court. Therefore, in order to protect their

---

**5.** Section XI(A) provides:

> A. The Board may reconsider any decision. The Board must decide to reconsider any decision, notify all interested parties and make any change is [sic] its original decision within 30 days of the date of the vote on the original decision. A meeting to decide whether to reconsider shall be called by the Chairperson in accordance with Section VI of this Ordinance. The Board may conduct additional hearings and receive additional evidence and testimony.

Southwest Harbor, Me., Code § XI(A) (May 1992).

**6.** Forbes did not respond to the Town's assertions with respect to Section XI(A), presumably because the wording of Section XI(A) is similar to § 2691(3)(F). Because the language of the provisions at issue are similar, our legal analyses for § 2691(F)(3) applies to Section XI (A) of the Town's Ordinance.

claim in court, the claimants must simultaneously seek reconsideration by the board and also file their appeal with the court.

*To remedy this, Sub-section F requires the board to reconsider its previous action and also reach a decision within 30 days of the original decision.* Sub-section G expands the time frame for people to appeal the decision from 30 days to 45 days. This gives the appellants time to find out if the board is going to find in their favor upon reconsideration, before they decide if they need to appeal the decision from 30 days to 45 days. This gives the appellants time to find out if the board is going to find in their favor upon reconsideration, before they decide if they need to appeal the decision to the Court. The bill provide[s] an extra two weeks (after the final reconsideration) to file an appeal with the court.

*Id.* (underscore in original; italics added for emphasis). The plain language and legislative history demonstrate that § 2691(3)(F) pertains to the Board and delineate the Board's, not Forbes's, obligations. Penalizing Forbes for the failure of the Town's own Board to comply with the 30–day time limit would lead to unjust results.

### D. No Consideration of Evidence Not in Record.

 [¶ 13] The Town argues that a reading of the reconsideration deliberations will show that Forbes's counsel "made what amounts to an opening argument arguing his case not upon the facts presented in this case, but by reference to what the Board may have heard in another case." The Town further contends that the Board improperly adopted information from the Harwood proceeding, which in turn adopted as evidence the purchase by Jarvis Newman, another Greenings Island property owner, of two parcels of land in September of 1996. In so doing, the Town argues the Board improperly assumed Forbes's burden of proof.

 [¶ 14] 5 M.R.S.A. § 9059(4) provides that "[a]ll material, including records, reports and documents in the possession of the agency, of which it desires to avail itself as evidence in making a decision, shall be offered and made a part of the record and no other factual information or evidence shall be considered in rendering a decision." 5 M.R.S.A. § 9059(4) (1989). An agency, including the present Board, cannot use information that is not of record. *City of Biddeford v. Adams,* 1999 ME 49, ¶ 10, 727 A.2d 346, 349. "The purpose of this rule is to give a party the opportunity to explain adverse evidence." *Id.* (citation omitted). To the extent that an agency relies on information obtained outside of the record and the proceedings, it has acted improperly. *Id.;* *see also Public Utilities Comm'n v. Cole's Express,* 153 Me. 487, 501, 138 A.2d 466, 472–73 (Me.1958) (finding PUC erred in basing its finding upon evidence or purported knowledge not made a part of the record).

 [¶ 15] In *City of Calais v. Calais Water & Power Co.,* 157 Me. 467, 174 A.2d 36 (Me.1961), however, we held that a board may use adjudications in other proceedings to dispose of issues in the proceeding before it if the board first introduces, as evidence, the prior proceeding and makes it part of the record in the present proceeding. *City of Calais v. Calais Water & Power Co.,* 157 Me. 467, 474, 174 A.2d 36, 39–40 (Me.1961) (stating, "[i]n reaching its conclusion not to separate the properties in Calais from those across the boundary line in New Brunswick, the Commission said that the contention of the City upon the point had been disposed of in prior proceedings. Evidence of these prior proceedings was not introduced as evidence and made a part of the record.... We [have] ruled ... that administrative bodies have no right to exercise adjudicatory or quasi judicial functions on the basis of evidence not before it").

[¶ 16] Except for the sale figures that were introduced at the earlier hearing, the Harwood case was not introduced as evidence in Forbes's proceeding. To the extent that the Board relied on the prior Harwood proceedings in its disposition of Forbes's case, therefore, it would have been an improper consideration of information extraneous to the Forbes case, and the Board's decision on reconsideration would be null and void. However, the Board did not rely on extraneous evidence.

[¶ 17] The record evidence shows that Forbes's attorney presented new evidence—the Newman purchase and assessment figures—and mentioned the Harwood proceeding only tangentially in explaining the Newman purchase price and its importance to Forbes's proceeding. The Town had an opportunity to explain and dispute the Newman evidence and, in fact, did so at length. Similarly, the record establishes that the focus of the Board was on the Newman evidence, which was properly offered in evidence by Forbes's counsel at the start of the proceeding. Contrary to the Town's assertions, therefore, the Board did not improperly consider evidence that was not in the record, nor did it relieve Forbes of his burden of proof.

E. There is Sufficient Record Evidence to Support Board's Decision.

 [¶ 18] The Town argues that the record is completely devoid of evidence to support the Board's determination on reconsideration that the Forbes property was overassessed. Contrary to the Town's assertions and for the same reasons stated in *Harwood*, we conclude that, based on a review of the entire record, there is substantial evidence to support the Board's conclusions that Forbes's property was substantially overvalued as of April 1, 1997. *See Harwood*, 2000 ME 213, 763 A.2d 115.

The entry is:

Judgment of the Superior Court vacated. Remanded to the Superior Court with instructions to affirm the decision of the Board of Assessment Review.